# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANSIDE PIER VIEW, L.P., a California limited partnership,<br><br>　　　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>　　　　　　　　　　　　　　Defendant. | CASE NO. 07CV1174 WQH (POR)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

HAYES, Judge:

　　Pending before the Court is Defendant's motion for partial summary judgment. (Doc. # 10). The Court heard oral argument on the matter on Monday, February 4, 2008.

**PROCEDURAL HISTORY**

　　On May 30, 2007, Plaintiff Oceanside Pier View, L.P. (Oceanside Pier View) filed a Complaint against Defendant Travelers Property Casualty Company of America (Travelers) in California State Superior Court in San Diego, California. (Doc. # 1, Ex. A at 11). On June 27, 2007, Defendant filed an answer in the State Superior Court. (Doc. # 1, Ex. A at 63). On June 28, 2007, Defendant removed the case to the United States District Court for the Southern District of California. (Doc. # 1).

　　On December 12, 2007, Defendant filed the pending motion for partial summary judgment on

1  Plaintiff's claim for the increased subcontractor costs as a result of the increased costs of construction
2  materials and labor. (Doc. # 10). On January 17, 2008, Plaintiff filed an opposition. (Doc. # 17). On
3  January 28, 2008, Defendant filed a reply. (Doc. # 19).

## FACTUAL BACKGROUND

5  Plaintiff Oceanside Pier View, L.P. is a limited partnership which owns and is developing real
6  property located at 301 Mission Avenue, in Oceanside, California (the Property). *Declaration of Ron*
7  *Douglas (Douglas Decl.) (Doc. # 17-3)*, ¶ 2. Plaintiff is constructing a six-story mixed use building
8  on the Property, which will include "retail, office, residential condominiums and parking garage uses
9  . . ." (the Project). *Douglas Decl.*, ¶ 2. Plaintiff intends to sell the retail space and office and
10 residential condominiums after completion of the Project. *Douglas Decl.*, ¶ 3.

11 In late 2004, Plaintiff contacted insurance broker Barney & Barney in order to obtain insurance
12 for the Project. *Douglas Decl.*, ¶ 3. Plaintiff informed Barney & Barney of the Project specifications
13 and that Plaintiff had entered into a Guaranteed Maximum Price (GMP) contract with a general
14 contractor, Ledcor Construction (Ledcor), to construct the Project. *Douglas Decl.*, ¶ 4. Thereafter,
15 Barney & Barney proceeded to obtain insurance quotes for the Project from insurance carriers.
16 *Douglas Decl.*, ¶ 4.

17 In or around February of 2005, Plaintiff began discussions with Defendant Travelers regarding
18 insurance for the project. *Douglas Decl.*, ¶¶ 6-7. Plaintiff provided Defendant with the Project
19 construction budget, as well as its view regarding which costs Plaintiff considered "hard costs," and
20 which costs Plaintiff considered "soft costs." *Douglas Decl.*, ¶ 7. After review, Defendant informed
21 Plaintiff that many of the costs Plaintiff considered "soft costs," were, in Defendant's view, "hard
22 costs." *Douglas Decl.*, ¶ 7; *Plaintiff's Lodgment (Doc. # 17-14)*, Ex. A. On April 12, 2005, Defendant
23 issued revised insurance quotes. *Douglas Decl.*, ¶ 8.

24 After considering the April 12, 2005, revised quotes, Plaintiff agreed to purchase an insurance
25 policy from Defendant. *Douglas Decl.*, ¶ 9. Defendant issued an insurance binder (the Insurance
26 Binder), dated April 12, 2005, to reflect coverage for the period April 1, 2005, to June 1, 2005.
27 *Douglas Decl.*, ¶ 9; *Plaintiff's Lodgment*, Ex. D. The Insurance Binder stated that Plaintiff had
28 coverage as follows: "Total Completed Value - $28,201,753;" "Temporary Storage - $1,000,000;" "In

1  Transit Limit - $1,000,000;" "Soft Costs - $3,073,407;" and "Specific Testing Limit - $5,000,000."
2  *Plaintiff's Lodgment*, Ex. D. The Insurance Binder further stated that, "[t]his binder is cancelled when
3  replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a
4  premium for the binder according to the Rules and Rates in use by the Company." *Plaintiff's*
5  *Lodgment*, Ex. D at 3. Neither the April 12, 2005, revised quotes, nor the April 12, 2005, Insurance
6  Binder contained a specific limitation with respect to "additional costs of labor and materials."
7  *Douglas Decl.*, ¶ 11.

8  On April 18, 2005, and in reliance upon the fact that it had insurance coverage, Plaintiff issued
9  its general contractor, Ledcor, "a Notice to Proceed with construction." *Douglas Decl.*, ¶ 10. Plaintiff
10 and Ledcor also agreed upon a Substantial Completion date of "approximately October 18, 2006."
11 *Douglas Decl.*, ¶ 10. Plaintiff "began construction on the Project in April 2005, with the
12 understanding that it had Builder's Risk coverage for Total Completed Value at $28,201,753 and for
13 Soft Costs up to $3,073,407." *Douglas Decl.*, ¶ 12; *Plaintiff's Lodgment*, Ex D at 1. At the time
14 Plaintiff issued Ledcor the Notice to Proceed, Plaintiff had not received an actual insurance policy.
15 *Douglas Decl.*, ¶ 12.

16 On May 13, 2005, Defendant issued the insurance policy (the Policy) detailing coverage for
17 the Project with an effective date of April 1, 2005. *Defendant's Motion for Summary Judgment*
18 *(Defendant's MSJ) (Doc. # 10)*, Ex. 1. The Policy provided basic coverage for "Builders' Risk," "Soft
19 Costs," "Business Income," and "Rental Value," and additional coverage for "Expediting Costs and
20 Additional Cost of Construction Materials and Labor," among other things. *Defendant's MSJ*, Ex. 1
21 at 11-15. The Policy provided in pertinent part that,

**A. COVERAGE**

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means "Builders' Risk".

**2. Covered Causes of Loss**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL

1         "LOSS" except those causes of "loss" listed in the Exclusions.

**3. Soft Costs and Special Time Element**

    a. "Soft Costs"

        We will pay your "soft costs" during the "period of delay in completion". Such "soft costs" must result from "loss to Covered Property from any of the Covered Causes of Loss which delays the completion of the "project" beyond the "planned completion date".

    b. "Business Income"

        We will pay the amount by which your "business income" is actually reduced during the "period of delay in completion". Such reduction in "business income" must result from "loss" to Covered Property from any of the Covered Causes of Loss which delays the completion of the "project" beyond the "planned completion date."

. . .

**5. Additional Coverages**

. . .

    **g. Expediting Costs and Additional Cost of Construction Materials and Labor**

        (1) We will pay for the following costs made necessary by a Covered Cause of Loss to Covered Property at the "job site":

           (a) Your costs to expedite repair of Covered Property;

           (b) Your increased cost of construction materials and labor; and

           (c) Your costs to make changes in construction specifications.

. . .

        (2) The most we will pay under this Additional Coverage is the least of:

           (a) 5% of the applicable "Basic Limit of Insurance"; or

           (b) $100,000.

*Defendant's MSJ*, Ex. 1 at 11,15. The Policy defines "Builders' Risk," in pertinent part, as:

    Property described in the Declarations under "Builders' Risk" owned by you or for which you are legally liable consisting of:

        a. Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";

        b. Property that will become a permanent part of the buildings or structures at the "job site":

            (1) While in transit to the "job site" or temporary storage locations;

            (2) While at the "job site" or at a temporary storage location.

"Builders' Risk" does not include:

        a. Contraband, or property in the course of illegal transit or trade;

        b. Buildings or structures that existed at the "job site" prior to the inception of this policy;

        c. Land (including land on which the property is located) or water.

*Defendant's MSJ*, Ex. 1 at 22. In the event of a loss, the Policy valued the "Builders' Risk" coverage as the least of the following,

        a. The Cost to replace Covered Property (without deduction for depreciation) with other property:

            (1) Of comparable material and quality; and

            (2) Used for the same purpose;

        including your labor, reasonable profit and delivery charges;

        b. The cost of reasonably restoring the property to its condition immediately before "loss";

        c. The cost of replacing that property with substantially identical property; or

        d. Your legal liability for property of others.

*Defendant's MSJ*, Ex. 1 at 20.

The Policy defines "Soft Costs," as follows:

"Soft costs" means your actual and necessary business costs in excess of your budgeted amount for the "project" consisting only of type shown in the Declarations.

*Defendant's MSJ*, Ex. 1 at 25. The Policy's Declarations limits recovery for "Soft Costs" to:

    Interest on money borrowed to finance construction

    Advertising expenses

    Realty taxes and other assessments

    Costs resulting from the renegotiation of your lease(s) or construction loans.

Case 3:07-cv-01174-WQH-POR   Document 27   Filed 05/06/08   PageID.292   Page 6 of 16

*Defendant's MSJ*, Ex. 1 at 8.

The Policy defines "Business Income" as follows:

> 4. "Business income" means the sum of:
>
>> a. The net profit or loss (before income taxes) from the operation or use of the "project"; and
>>
>> b. The continuing normal operating expenses, including payroll, of the operation or use of the "project", less your "rental value".

*Defendant's MSJ*, Ex. 1 at 22.

On the evening of May 31, 2005, a shoring wall on the east side of the Property failed and caused damage to the Project. *Douglas Decl.*, ¶ 13. As a result of the shoring wall failure, "progress on the construction was interrupted, the critical path of construction was impacted, and the completion date for the Project was delayed." *Douglas Decl.*, ¶ 13. Plaintiff suffered losses as a result of the shoring wall failure, "including, without limitation, costs to redesign and repair the failed shoring wall, increases to the GMP pursuant to change order requests for Ledcor, increased costs to protect the Property from further damage, increased costs of financing, increased fees and general conditions for the general contractor and project manager, and other soft costs and loss of business income." *Douglas Decl.*, ¶ 14. Plaintiff determined that the shoring failure "caused a delay to the Substantial Completion date of 79 days." *Douglas Decl.*, ¶ 14.

Plaintiff promptly informed Defendant of its claim for losses relating to the shoring wall failure, and upon receipt of the claim, Defendant started an investigation. *Douglas Decl.*, ¶ 13. In September of 2005, Plaintiff received the Policy. *Douglas Decl.*, ¶ 12. On February 7, 2006, Plaintiff submitted a claim seeking approximately $1.3 million. *Douglas Decl.*, ¶ 14.

Throughout 2006, Defendant and its representatives met and corresponded with Plaintiff and its representatives regarding the claim. *Douglas Decl.*, ¶ 15. From time-to-time during this period, Defendant requested additional back-up information, and in each instance, Plaintiff provided the information. *Douglas Decl.*, ¶ 15. On June 5, 2006, Defendant sent a letter to Plaintiff which provided in part, "[p]lease be advised of our position that the cause of loss falls within the insuring agreement of the policy and coverage is afforded subject to all applicable terms, conditions and deductible(s)." *Plaintiff's Lodgment*, Ex. E; *Douglas Decl.*, ¶ 16.

- 6 -                                                                                                              07CV1174 WQH (POR)

1    On June 16, 2006, Defendant delivered Plaintiff an "initial advance of $250,000" as partial
2 payment on the insurance claim. *Douglas Decl.*, ¶ 17. On or about August 5, 2006, Plaintiff
3 submitted to Defendant an updated loss summary detailing losses of approximately $1.5 million.
4 *Douglas Decl.*, ¶ 18. On November 16, 2006, Defendant delivered Plaintiff an additional advance
5 of $180,399.27 as partial payment on Plaintiff's insurance claim. *Douglas Decl.*, ¶ 19. On or about
6 February 22, 2007, Plaintiff submitted to Defendant an addition updated loss summary detailing
7 losses of $1,666,974.16. *Douglas Decl.*, ¶ 21. On March 9, 2007, Defendant delivered Plaintiff an
8 additional advance of $131,081.74 as partial payment on Plaintiff's insurance claim. *Douglas Decl.*,
9 ¶ 22.[1]

10    On March 22, 2007, Defendant notified Plaintiff by letter that portions of Plaintiff's insurance
11 claim would not be covered. *Douglas Decl.*, ¶ 23. Among other things, Defendant informed Plaintiff
12 that Plaintiff's losses from increased labor and materials costs were not entirely covered under the
13 Policy, and were subject to a $100,000.00 limitation. *Douglas Decl.*, ¶ 23; *Plaintiff's Lodgment*, Ex.
14 G. In the letter of March 22, 2007, Defendant sought further information which related to the claim.
15 *Plaintiff's Lodgement*, Ex. G.

16    On June 28, 2007, Plaintiff filed the Complaint in this matter, in part seeking declaratory
17 relief providing that Plaintiff is entitled to coverage for "loss of income resulting from increased
18 labor, materials, overhead, and general condition expenses due to delays caused by the Shoring
19 Failure." *Complaint*, ¶ 33.

## STANDARD OF REVIEW

21    Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure
22 where the moving party demonstrates the absence of a genuine issue of material fact and entitlement
23 to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,
24 322 (1986). A fact is material when, under the governing substantive law, it could effect the outcome
25 of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material
26 fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[1] Between May 31, 2005, and the beginning of this lawsuit, neither party disputed that the Policy had been issued and was in effect on the date of the shoring wall collapse.

1  party." *Anderson*, 477 U.S. at 248.

2  In ruling on a motion for summary judgment, "[t]he district court may limit its review to the
3  documents submitted for purposes of summary judgment and those parts of the record specifically
4  referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.
5  2001). The court is not obligated to "scour the record in search of a genuine issue of triable fact."
6  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d
7  247, 251 (7th Cir. 1995)). The court must view all inferences drawn from the underlying facts in the
8  light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co,. Ltd. v. Zenith Radio Corp.*,
9  475 U.S. 574, 587 (1986). "Credibility determinations [and] the weighing of evidence . . . are jury
10  functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."
11  *Anderson*, 477 U.S. at 255.

## DISCUSSION

13  The only issue raised by Defendant's motion for partial summary judgment is whether
14  Plaintiff is entitled to recover more than $100,000.00 from Defendant for losses sustained by Plaintiff
15  as a result of the increased costs of construction materials and labor associated with previously un-
16  constructed portions of the Project.

17  Defendant contends that it is entitled to summary judgment on Plaintiff's claim for the
18  increased costs of construction materials and labor for previously un-constructed portions of the
19  Project because it has paid Plaintiff all that it owes under the Policy. Specifically, Defendant
20  contends that the plain language of the Policy provides that Defendant is not obligated to pay more
21  than $100,000.00 for the increased costs to construction materials and labor pursuant to the
22  "Expediting Costs and Additional Cost of Construction Materials and Labor" provisions of the
23  Policy. *Defendant's MSJ,* 5-6. Defendant contends that the "Builders' Risk" and "Business Income"
24  provisions do not provide coverage for the increased costs of construction materials and labor,
25  particularly when those provisions are read in light of the entire policy.

26  Plaintiff contends that the plain language of the Policy provides coverage for the increased
27  costs to construction materials and labor up to approximately $28 million. Specifically, Plaintiff
28  contends that the "Builders' Risk" and/or "Business Income" provisions provide coverage

individually or together for the increased costs to construction materials and labor for previously un-constructed portions of the Project. Assuming that the Court concludes that neither the "Builders' Risk" nor "Business Income" provisions provide coverage for the increased costs of construction materials and labor, Plaintiff contends in the alternative that the Policy is ambiguous, and that extrinsic evidence requires that the Court interpret the Policy in favor of Plaintiff and in such a manner as to include coverage for the increased costs of construction materials and labor.

**I. Principles of Policy Interpretation**

Under California Law, "[t]he meaning to be ascribed to an insurance policy, as with any contract, is a question of law." *Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 1415-16 (Cal. Ct. App. 1988). Courts must interpret an insurance policy "so as to give effect to the mutual intention of the parties at the time the policy was issued, and this intent should be inferred, to the extent possible, solely from the written provisions of the policy contract." *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 394 F.3d 761, 764 (9th Cir. 2005) (citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 646 (Cal. 2003)). "When an insurance policy contains clear and unequivocal provisions, the only reasonable expectation to be found is that afforded by the plain language of the terms in the contract." *Travelers Casualty & Surety Co. v. Employers Ins. of Wausau*, 130 Cal. App. 4th 99, 115 (Cal. Ct. App. 2005). Where the plain language of an insurance policy is "clear and unambiguous, the court must enforce it as written and cannot modify the contract or create ambiguity where none exists." *Contractors Equip. Maint. Co. v. Bechtel Hanford, Inc.*, 514 F.3d 899, 903 (9th Cir. 2008). Like all contracts, the whole of an insurance policy "is to be taken together, so as to give effect to every part." CAL. CIV. CODE § 1641; *see Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 818 (Cal. Ct. App 1994) ("[O]ne cannot read a term of an insurance policy in such a way that would render some of its words meaningless.").

**II. Whether the Plain Language of the Policy Provides More Than $100,000.00 of Coverage to Plaintiff For Losses Sustained as a Result of the Increased Costs of Construction Materials and Labor**

On May 13, 2005, Defendant issued the Policy detailing coverage for the Project with an effective date of April 1, 2005. *Defendant's MSJ*, Ex. 1. The Policy provided basic coverage for "Builders' Risk," "Soft Costs," and "Business Income," and additional coverage for "Expediting

Costs and Additional Cost of Construction Materials and Labor," among other things. *Defendant's MSJ*, Ex. 1 at 11-15.

### A. Builders' Risk

The "Builders' Risk" provisions of the Policy provide that Defendant "will pay for 'loss' to Covered Property from any of the Covered Causes of Loss." *Defendant's MSJ*, Ex. 1 at 11. The Policy defines "Covered Property" as "Builders' Risk," and "Builders' Risk" as,

> Property described in the Declarations under "Builders' Risk" owned by you or for which you are legally liable consisting of:
>
>   a. Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";
>
>   b. Property that will become a permanent part of the buildings or structures at the "job site":
>
>     (1) While in transit to the "job site" or temporary storage locations;
>
>     (2) While at the "job site" or at a temporary storage location.

*Defendant's MSJ*, Ex. 1 at 22. The Policy defines "Covered Causes of Loss" as, "RISKS OF DIRECT PHYSICAL 'LOSS' except those causes of 'loss' listed in the exclusions." *Defendant's MSJ*, Ex. 1 at 11.

Defendant contends that the "Builders' Risk" provisions exclude coverage for the increased costs of construction materials and labor for previously un-constructed portions of the Project because "Builders' Risk" only provides coverage for direct physical loss to covered property. Defendant contends that coverage for the increased costs of construction materials and labor related to work on previously un-constructed portions of the Project is governed by the "Additional Coverages" provision for "Expediting Costs and Additional Cost of Construction Materials and Labor." *See Defendant's MSJ*, Ex. 1 at 15.

Plaintiff contends that the "Builders' Risk" provisions provide coverage for the increased costs of construction materials and labor because (a) the Policy is ambiguous, and (b) Plaintiff understood at the time that it purchased the Policy that the increased costs of materials and labor were considered hard costs, and were covered under the Policy. *See Opposition to MSJ*, 9-10.

Where the plain language of an insurance policy is "clear and unambiguous, the court must enforce it as written and cannot modify the contract or create ambiguity . . . ." *Bechtel Hanford, Inc.*,

514 F.3d at 903. Here, the Court finds that the "Builders' Risk" provisions plainly provide coverage for losses resulting from the direct physical loss of buildings or structures being erected on the Property, but do not include coverage for the increased costs of construction materials and labor to construct never-before constructed portions of the Project. Indeed, the plain language of the "Builders' Risk" provisions protect only those buildings, structures, or portions of buildings and structures under construction at the Project, and do not protect against the unforseen costs to construct never-before constructed buildings or structures which may arise as a result of delays. Accordingly, while the "Builders' Risk" provisions covered–and Defendant paid Plaintiff for–the cost to replace the failed shoring wall in this case, including any increased costs to construction materials and labor which were necessary to reconstruct or replace the shoring wall to its original condition, the "Builders' Risk" provisions did not and do not cover the increased costs of construction materials and labor which Plaintiff alleges it incurred to complete portions of the Project which were not yet under construction at the time that the shoring wall failure caused the delay. This conclusion is buttressed by the Policy's description of how to value covered property at the time of loss, which provides that the covered property is valued as the least of (a) the cost to replace the covered property with other property, (b) the cost of reasonably restoring the property to its condition immediately before loss, or (c) the cost to replace the covered property with substantially identical property. *See Defendant's MSJ*, Ex. 1 at 20. As the valuation provisions confirm, the "Builders' Risk" provisions do not contemplate coverage for unforseen costs which may be incurred to construct buildings or portions of buildings which have yet to be constructed in the first instance at the time of a delay.

Though Plaintiff contends that the Policy is ambiguous and should therefore be interpreted in Plaintiff's favor, Plaintiff's opposition to the motion for summary judgment fails to identify a single portion of the Policy which is ambiguous. Indeed, at oral argument Plaintiff's counsel repeatedly conceded that the plain language of the Policy was not ambiguous on its face, but made ambiguous only after considering extrinsic evidence and principles of equity and fairness. *See Transcript of Oral Argument, February 8, 2008* at 9, 11, 17. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Mirpad, LLC v. Calif. Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1069 (2005). Here, Plaintiff has not

1 provided, nor can the Court discern, a reasonable construction of the "Builders' Risk" provisions
2 which would include coverage for the increased costs to construction materials and labor. Instead,
3 the Court concludes that the plain language of the "Builders' Risk" provisions do not provide
4 coverage for the increased costs to construction materials and labor. The Court concludes that
5 the "Builders' Risk" provisions are not ambiguous on their face, and are not susceptible to more than
6 one reasonable construction. *See Travelers Casualty & Surety Co.*, 130 Cal. App. 4th at 115 (holding
7 that where the plain language is clear, "resort to extrinsic evidence to support a different meaning"
8 is not permitted).

9 In addition to analyzing the plain language of the "Builders' Risk" provisions, the Court is
10 required to read the provisions of an insurance policy "together, so as to give effect to every part."
11 CAL. CIV. CODE § 1641; *see Collin*, 21 Cal. App. 4th at 818. Here, the Policy specifically includes
12 a provision for the increased costs of construction materials and labor under "Additional Coverages":

> **5. Additional Coverages**
>
> . . .
>
> **g. Expediting Costs and Additional Cost of Construction Materials and Labor**
>
> (1) We will pay for the following costs made necessary by a Covered Cause of Loss to Covered Property at the "job site":
>
> (a) Your costs to expedite repair of Covered Property;
>
> (b) Your increased cost of construction materials and labor; and
>
> (c) Your costs to make changes in construction specifications.
>
> . . .
>
> (2) The most we will pay under this Additional Coverage is the least of:
>
> (a) 5% of the applicable "Basic Limit of Insurance"; or
>
> (b) $100,000.

27 *Defendant's MSJ*, Ex. 1 at 12, 15. Read in its entirety, the Court concludes that the plain language
28 of the Policy provides limited coverage for increased costs to construction materials and labor for

1 previously un-constructed portions of the Project under the additional coverage for "Expediting Costs
2 and Additional Cost of Construction Materials and Labor," and not under the "Builders' Risk"
3 provisions. Interpreting the "Builders' Risk" provisions as including coverage for the increased costs
4 of construction materials and labor would render the "Additional Coverage" provision for
5 "Expediting Costs and Additional Cost of Construction Materials and Labor" superfluous,
6 ambiguous, and with respect to the latter provision's $100,000.00 limitation, meaningless. *See*
7 *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1073 (2005) ("An
8 interpretation of the policy that creates an ambiguity where none existed by rendering words
9 redundant or superfluous violates all rules of construction.").

10   The Court concludes that the "Builders' Risk" provisions of the Policy do not provide
11 coverage for the increased costs to construction materials and labor.

**B. Business Income**

The Policy provides coverage for loss of "Business Income" as follows:

> We will pay the amount by which your "business income" is actually reduced during the "period of delay in completion". Such reduction in "business income" must result from "loss" to Covered Property from any of the Covered Causes of Loss which delays the completion of the "project" beyond the "planned completion date."

*Defendant's MSJ*, Ex. 1 at 11. The Policy defines "Business Income" as the sum of,

> a. The net profit or loss (before income taxes) from the operation or use of the "project"; and
>
> b. The continuing normal operating expenses, including payroll, of the operation or use of the "project", less your "rental value".

*Defendant's MSJ*, Ex. 1 at 22.

Defendant contends that the "Business Income" provisions do not include coverage for the increased costs of construction materials and labor because coverage for "Business Income" is limited to losses of income from operation or use of the Project which incur during a delay in the operation or use of the Project. Defendant contends that Plaintiff never operated or used the Project during the alleged 79 day delay so as to incur recoverable loss of "Business Income." Defendant further contends that the Policy cannot provide coverage for the increased costs of construction materials and labor under the "Business Income" provisions because such losses are only recoverable under the "Additional Coverage" provision for "Expediting Costs and Additional Cost of Construction

Materials and Labor."

Plaintiff contends that the increased costs for construction materials and labor are covered under the "Business Income" provision because, under the facts of this case, the increased costs of construction materials and labor associated with developing the Project after the delay will result in lost income for Plaintiff.

As noted previously, the Court must read the Policy as a whole, "so as to give effect to every part" of the Policy. CAL. CIV. CODE § 1641; *see Collin*, 21 Cal. App. 4th at 818 ("one cannot read a term of an insurance policy in such a way that would render some of its words meaningless."). Here, when read in its entirety, the Policy provision for "Business Income" cannot include coverage for the increased costs of materials and labor because there is a specific provision for the increased costs of construction materials and labor–the "Additional Coverage" provision for "Expediting Costs and Additional Cost of Construction Materials and Labor"–and interpreting the coverage for "Business Income" as including coverage for the increased costs of material and labor would render the "Additional Coverage" provision for "Expediting Costs and Additional Cost to Construction Materials and Labor" superfluous and ambiguous. *See Mirpad,* 132 Cal. App. 4th at 1073 ("An interpretation of the policy that creates an ambiguity where none existed by rendering words redundant or superfluous violates all rules of construction."). In addition, the Court concludes that Plaintiff's alleged losses due to the increased costs of construction materials and labor do not qualify as "Business Income" under the plain language of the "Business Income" provisions because Plaintiff has not established that losses were incurred during the period of delay in completion of the Project or that there was ever, or could ever have been, income from operation or use of the Project during the delay.

After reviewing the plain language of the Policy, the Court concludes that the "Business Income" provisions do not provide coverage for the increased costs of construction materials and labor.

**II. Issuance of the Policy**

During the claims adjustment period, as well as during the majority of this lawsuit, it was undisputed that the Policy was in effect on the day that the shoring wall failed. At oral argument on

the motion for summary judgment, however, Plaintiff's counsel for the first time questioned whether the Policy was ever in effect. *Oral Argument Trans.* at 10.

"In the absence of evidence to the contrary, a policy will be presumed to take effect upon its date." *Anderson v. Mutual Life Ins. Co.*, 164 Cal. 712, 716 (1913). Here, the evidence before the Court shows that Policy bears an issuance date of May 13, 2005, and an effective date of April 1, 2005. The Court finds that Plaintiff has not submitted any evidence which would rebut that the Policy issued and was effective on those dates. *Defendant's MSJ*, Ex. 8-26. Though Plaintiff submitted a declaration which states that Plaintiff did not receive "a copy of the full policy until September 2005," Plaintiff's opposition to the motion for summary judgment does not explain or describe how that fact contradicts the evidence of issuance on the Policy itself, and Plaintiff has not cited a single case which bears on the issue. In addition, neither Plaintiff nor Plaintiff's counsel has ever asserted either that the Policy never issued, or that the Policy was never in effect. Though Plaintiff's counsel questioned whether the Policy had been issued at oral argument, counsel ultimately stated that he could not "take a position" on "when the Policy was actually issued." *Oral Argument Trans.* at 10. Counsel's statement at oral argument, however, directly contradicted Plaintiff's opposition to the motion for summary judgment, the introduction to which concedes that, "Travelers issued Commercial Inland Marine Insurance Policy No. QT-660-7633B638-TI-05 ('Policy') to OPV . . . for the policy period from April 1, 2005 to April 1, 2006, covering the Property." (Doc. # 17 at 1, ll. 11-14); *see also Defendant's MSJ*, Ex. 1.

"Whether an insurance policy has or has not been delivered after its issuance so as to complete the contract and give it binding effect does not depend on its manual delivery to, or possession by, insured, but rather on the intention of the parties as manifested by their acts or words . . . ." *Ahern v. Dillenback*, 1 Cal. App.4th 36, 46 (1991). Here, there is no evidence of the parties mutual intent which is inconsistent with the issuance date that appears on the Policy.

The Court concludes that there is no genuine issue of material fact with respect to whether the Policy issued. The undisputed evidence before the Court is that the Policy issued on May 13, 2005, and was effective on April 1, 2005.

/

1 /

2 /

## CONCLUSION

The Court concludes that the Policy provides coverage for the increased costs to construction materials and labor for previously un-constructed portions of the Project under the additional coverage for "Expedited Costs and Additional Cost of Construction Materials and Labor." *See Defendant's MSJ*, Ex. 1 at 15. The Court further concludes that the Policy provides up to $100,000.00 of coverage for the increased costs of construction materials and labor under the "Expedited Costs and Additional Cost of Construction Materials and Labor" provisions, and that Defendant has paid to Plaintiff the $100,000.00 maximum under those provisions. Accordingly, and because the Court concludes that Plaintiff is not entitled to recover for the increased costs of construction materials and labor for previously un-constructed portions of the Project under the "Builders' Risk" or "Business Income" provisions of the Policy, the Court hereby GRANTS Defendant's motion for partial summary judgment on Plaintiff's claim for losses due to the increased costs of construction materials and labor. (Doc. # 10).

**IT IS SO ORDERED**.

DATED: May 6, 2008

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge